UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

KEITH COLEMAN, o/b/o A.P.,            )
                                       )
      *Plaintiff*                        )
                                       )
v.                                     )         Civil No. 09-8-P-H
                                       )
MICHAEL J. ASTRUE,                     )
**Commissioner of Social Security,**   )
                                       )
      *Defendant*                       )


***REPORT AND RECOMMENDED DECISION[1]***

This Supplemental Security Income ("SSI") appeal arises out of an application for benefits submitted by the plaintiff on behalf of his minor son. The plaintiff contends that the administrative law judge erred in failing to consider certain evidence, failing to consider the effect of a structured or supportive environment in assessing the severity of his son's impairment, wrongly failed to find that his son suffered from the additional severe impairments of borderline intellectual functioning and oppositional defiant disorder, and failed to consider certain evidence in deciding whether his son's impairments functionally equaled the criteria of an impairment included in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"). I recommend that the court vacate the commissioner's decision.

The sequential evaluation process usually followed by the commissioner in making disability determinations, *see* 20 C.F.R. §416.924; *Goodermote v. Secretary of Health & Human*

---

[1] This action is properly brought under 42 U.S.C. § 1383(c). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's

*Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), is somewhat modified when the claimant is a child, 20 C.F.R. § 416.924.  In accordance with that last section, the administrative law judge determined that the claimant, who was nine years old at the time of the decision, had attention deficit hyperactivity disorder ("ADHD"), an impairment that was severe but which did not meet or equal the criteria of any impairment included in the Listings, Findings 3-4, Record at 10; that this impairment did not functionally equal any impairment included in the Listings, Finding 5, *id*.; and that he accordingly had not been under a disability as that term is defined in the Social Security Act at any time from the alleged onset date through the date of the decision, Finding 6, *id*. at 17.  The Decision Review Board affirmed the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.420.

The standard of review herein is whether the commissioner's determination is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

## I. Discussion

### A. Severity

When a claim for benefits is made on behalf of a child, the commissioner must first determine whether the alleged impairment is severe.  20 C.F.R. § 416.924(a), (c).  If the impairment is found to be severe, as was the case with respect to the ADHD in this case, the question then becomes whether the impairment is one that is listed in Appendix 1, or that "medically equals, or functionally equals the listings."  20 C.F.R. § 416.924(a).  If the

impairment, or combination of impairments, does not meet or equal this standard, the child is not disabled.  20 C.F.R. § 416.924(d)(2).

An impairment or combination of impairments is medically equal in severity to a listed impairment when the medical findings are at least equal in severity and duration to the listed findings; medical equivalence must be based on medical findings.  20 C.F.R. § 416.926(a) & (b).  Medical evidence includes symptoms, signs and laboratory findings, including psychological or developmental test findings.  Appendix 1, § 112.00(B).

An impairment or combination of impairments is functionally equivalent to a listed impairment when it results in marked limitations in two domains of functioning or an extreme limitation in one domain, based on all of the evidence in the record.  20 C.F.R. § 416.926a(a) & (b).  A "marked" limitation occurs when an impairment or combination of impairments interferes seriously with the claimant's ability independently to initiate, sustain or complete activities.  20 C.F.R. § 416.926a(e)(2).  An "extreme" limitation exists when an impairment or combination of impairments interferes very seriously with the claimant's ability independently to initiate, sustain or complete activities.  20 C.F.R. § 416.926a(e)(3).  No single piece of information taken in isolation can establish whether a particular limitation is marked or severe.  20 C.F.R. § 416.926a(d)(4).

In this case, the plaintiff claims that the administrative law judge should have found that his son suffered from the severe impairments of borderline intellectual functioning and oppositional defiant disorder ("ODD"), in addition to the ADHD that the administrative law judge did find to exist.  Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 9) at 4-9.   Neither impairment is mentioned in the administrative law judge's opinion.  Neither was apparently mentioned in the plaintiff's application for benefits.  Record at

3

37, 42, 162, 172, 192, 210, 246-47.  However, a federal reviewing official found, on January 8, 2008, that A.P. had both ADHD and ODD, which were characterized as severe medically determinable impairments.  *Id*. at 42, 48.

### 1.  *Borderline Intellectual Functioning*

"Borderline intellectual functioning" is defined as an IQ score within the 71-84 range. *Roberts v. Apfel*, 222 F.3d 466, 469 n.3 (8th Cir. 2000).  The plaintiff apparently contends that, despite the lack of any mention of borderline intellectual functioning in the materials and testimony before the administrative law judge at the hearing (where the plaintiff was represented by a lawyer), the administrative law judge should nonetheless have determined *sua sponte* that A.P. suffered from that impairment and that the impairment was severe, based upon the fact that his full-scale IQ scores had been determined by different examiners as ranging from 74 to 80, Record at 269, 284 and that one examiner "made a diagnosis of '[r]ule out  V62.89, borderline intellectual functioning.'"  Itemized Statement at 6-7.

An entry "rul[ing] out" a particular ailment or condition is *not* a diagnosis of that ailment or condition.  *See Tomlinson v. Astrue*, No. 3:07-cv-68-RLY-WGH, 2009 WL 161818 (S.D. Ind. Jan. 21, 2009), at *8-*9 ("rule out borderline intellectual functioning with more salient nonverbal than verbal abilities" ambiguous; where plaintiff did not allege he met Listing 12.05, court did not err in failing to order IQ testing or to consider Listing).  There is no diagnosis of borderline intellectual functioning in the record.[2]  *See Felver v. Barnhart*, 243 F.Supp.2d 895, 905 (N.D. Ind. 2003).  In addition, the failure to present a particular claim either at the time of application or at the hearing means that the administrative law judge had no duty to develop the record with

---

[2] *But see Swope v. Barnhart*, 436 F.3d 1023, 1024-25 (8th Cir. 2006) (suggesting that mere presence in record of IQ scores from 82 to 88 required administrative law judge to include borderline intellectual functioning in hypothetical question posed to vocational expert).

respect to such a claim, even if evidence to support it appears somewhere in the record. *Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir. 1993).

On the showing made, the failure of the administrative law judge to find that the plaintiff suffered from the severe impairment of borderline intellectual functioning was not error.

### 2. *Oppositional Defiant Disorder*

My conclusion differs with respect to ODD, which was diagnosed in the plaintiff and was found by the commissioner to be severe, at an earlier level of review. The diagnosis came from James F. Whelan Jr., Psy. D., who examined the plaintiff on behalf of the state disability service. Record at 281, 285. As the plaintiff notes, Itemized Statement at 8-9, there is evidence in the record of repeated oppositional and defiant behaviors by A.P. *See, e.g., id.* at 124, 135, 215, 285. "Oppositional defiant disorder is a psychiatric category listed in the Diagnostic and Statistical Manual of Mental Disorders where it is described as an on-going pattern of disobedient, hostile, and defiant behavior toward authority figures which goes beyond the bounds of normal childhood behavior." *Reid v. Astrue*, 2009 WL 368656 (S.D. Fla. Jan. 8, 2009), at *3 n.14.

An impairment is not severe if it does not significantly limit the child's physical or mental ability to do age-appropriate activities. Social Security Ruling 96-3p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2009), at 116. From all that appears in the record, A.P.'s ODD causes more than a minimal limitation in his ability to function appropriately and effectively in an age-appropriate manner. *Id.* Accordingly, the administrative law judge erred in failing to consider whether A.P. suffered from ODD and, if so, whether that impairment was severe. However, this error will require remand only if it would have the potential to change the outcome at the next step of the analysis. *See* Section I.B, *infra*.

*3. Dr. Kaufman's Test Results and A.P.'s Teachers' Reports*

In addition to his arguments concerning borderline intellectual functioning and oppositional defiant disorder as severe impairments from which A.P. might suffer, the plaintiff contends that he is entitled to remand because the administrative law judge "ignored" a certain finding by Christopher Kaufman, Ph.D., and "overlooked critical findings" in the questionnaire responses of two of A.P.'s teachers. Itemized Statement at 2-3.

Specifically, the plaintiff asserts that Dr. Kaufman "concluded that A.P.'s 'verbal knowledge/reasoning ability is well below age expectancy.'" *Id* at 2. In fact, Dr. Kaufman stated, "Assuming the accuracy of the WISC-IV findings, it could be concluded that while [A.P.] processes rote visual information with the speed and efficiency of most peers, his verbal knowledge/reasoning ability is well below age expectancy and his perceptual reasoning and working memory skills are more moderately below age appropriate levels." Record at 271. This is, at most, a statement about what *could* be concluded from the data under certain conditions, and is not accurately represented as a conclusion reached by Dr. Kaufman.

That said, it is true that the administrative law judge's opinion does not refer to Dr. Kaufman's psychological evaluation (Exhibit 2F) at all. This is error, 20 C.F.R. § 416.927(d), but whether it is harmless error depends again on the question of whether the information provided by Dr. Kaufman would necessarily have affected the outcome of the administrative law judge's analysis of whether any of A.P.'s impairments met or equaled the criteria of any impairment included in the Listings. That question is addressed *infra*.

The "critical findings" to which the plaintiff refers come from a questionnaire apparently completed by Mike Quinn, a special education teacher, which, according to the plaintiff, records "significant deficits in the domains of acquiring and using information, attending and completing

tasks, and interacting and relating with others." Itemized Statement at 2. The "critical findings" are also found in a teacher questionnaire completed by the principal of A.P.'s school, which the plaintiff describes merely as "mak[ing] similar findings." *Id*.

Under the heading "acquiring and using information," Quinn checked "an obvious problem" for the following items: comprehending and doing math problems; understanding and participating in class discussions; learning new material; and applying problem-solving skills in class discussions. He checked "a serious problem" for recalling and applying previously learned material. Record at 205. Under the heading "attending and completing tasks," he checked "an obvious problem" for the following items: paying attention when spoken to directly, refocusing to task when necessary, carrying out multi-step directions, organizing own things or school materials, completing work accurately without careless mistakes, and working at reasonable pace/finishing on time. He checked "a serious problem" for the following items: focusing long enough to finish assigned activity or task, completing class/homework assignments, and working without distracting self or others. *Id*. at 206. Under the heading "interacting and relating with others," Quinn checked "an obvious problem" for the following items: making and keeping friends, seeking attention appropriately, expressing anger appropriately, following rules, respecting/obeying adults in authority, and introducing and maintaining relevant and appropriate topics of conversation. *Id*. at 207. The plaintiff offers no authority for his characterization of these entries as demonstrating "significant deficits."

Under the heading "acquiring and using information," the principal checked "an obvious problem" for the item providing organized oral explanations and adequate descriptions. *Id*. at 213. Under the heading "attending and completing tasks," he check "an obvious problem" for the items paying attention when spoken to directly, refocusing to task when necessary, and

7

completing class/homework assignments. *Id*. at 214. Under the heading "interacting and relating with others," the principal checked "an obvious problem" for the following items: asking permission appropriately, relating experiences and telling stories, and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. He checked "a serious problem" for the following items: following rules and respecting/obeying adults in authority. *Id*. at 215. Again, the plaintiff offers no explanation of his characterization of these entries as demonstrating "significant deficits."

In any event, the authority offered by the plaintiff in support of his assertion that he is entitled to remand as a result of the failure of the administrative law judge to address these specific ratings[3] does not support his argument. He cites case law from 1987 and 1993 to support his assertion that "the Commissioner's regulations provide that he "*will consider* observations by non-medical sources as to how an impairment affects a claimant's ability to work." Itemized Statement at 2-3 (emphasis in original). However, as the plaintiff himself concedes, the case law he cites construes a regulation that was replaced by an amendment in 2000. *Id*. at 3. The current version of the regulation, which applies to this case, provides that the commissioner "*may* also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 416.913(d) (emphasis added). While it would have been preferable for the administrative law judge to discuss the entries on these questionnaires in more detail, his failure to comply fully with a regulation that is merely discretionary cannot constitute reversible error.[4]

---

[3] The opinion does refer to the questionnaires (Exhibits 11E and 12E). Record at 12, 15, 16.
[4] The plaintiff also cites Social Security Ruling 96-7p in this regard. Itemized Statement at 3. However, that Ruling deals with evaluation of a claimant's credibility, which is not at issue in this case. Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2009), at 133.

### *4. Effect of a Structured Environment*

The plaintiff also argues that the administrative law judge failed to comply with 20 C.F.R. § 416.924a(b)(5)(iv).  Itemized Statement at 3-4.  That regulation provides:

> *Structured or supportive settings.*
>
> (A) If you have a serious impairment(s), you may spend some or all of your time in a structured or supportive setting, beyond what a child who does not have an impairment typically needs.
>
> (B) A structured or supportive setting may be your own home in which family members or other people . . . make adjustments to accommodate your impairment(s).  A structured or supportive setting may also be your classroom at school, whether it is a regular classroom in which you are accommodated or a special classroom.  It may also be a residential facility or school where you live for a period of time.
>
> (C) A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting.  Therefore, we will consider your need for a structured setting and the degree of limitations in functioning you have or would have outside the structured setting.  Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.
>
> (D) If you have a chronic impairment(s), you may have your activities structured in such a way as to minimize stress and reduce the symptoms or signs of your impairment(s). . . .  We will consider whether you are more limited in your functioning than your symptoms and signs would indicate.
>
> (E)  Therefore, if your symptoms or signs are controlled or reduced in a structured setting, we will consider how well you are functioning in the setting and the nature of the setting in which you are functioning . . . ; the amount of help you need from your parents, teachers, or others to function as well as you do; adjustments you make to structure your environment; and how you would function without the structured or supportive setting.

20 C.F.R. § 416.924a(b)(5)(iv).

The plaintiff asserts that A.P. "was unable to function adequately even in" special education classes, and was placed in "the more structured and supportive environment of West School" where he "continued to experience serious difficulties." Itemized Statement at 4. He refers to "an unusually high level of support and structure, including the modifications, accommodations and enhanced special education services provided to him" which he contends the administrative law judge erroneously failed to consider. *Id.* Unfortunately, while the plaintiff cites evidence in the record of A.P.'s difficulties, he does not support his assertions about the allegedly "more structured and supportive environment" and the "unusually high level of support and structure" that A.P. required. This lack of support for the basic premise of his argument makes it impossible for the court to consider that argument. I do note that the administrative law judge believed that A.P. was "in regular and special education classes." Record at 10.

### B. Functional Equivalence

The plaintiff argues that the errors noted above "irreparably tainted the ALJ's finding that A.P. does not have an impairment or combination of impairments that functionally equals a listing[,]" Itemized Statement at 9, the final prong of the analysis of an SSI claim on behalf of a child. He does not contend that the evidence in the record establishes that A.P.'s ADHD met the criteria of any Listing. He apparently confines his challenge to the proposition that the administrative law judge should have found that A.P.'s ADHD, either alone or in combination with his ODD, functionally equals a Listing. Itemized Statement at 10. If A.P.'s functioning in two of the six domains to be analyzed is markedly limited by his impairment or impairments, or if his functioning in one of the domains is extremely so limited, the impairment will be deemed to functionally equal a Listing, entitling him to receive benefits. 20 C.F.R. § 416.926a(d).

The six domains are: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1). In this case, the administrative law judge found that A.P. had no limitation in moving about and manipulating objects, in the ability to care for himself, and in health and physical well-being. Record at 15-17. He found that A.P. had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. *Id*. at 12-14. The plaintiff's itemized statement challenges these findings and cites as "one example" the administrative law judge's finding that A.P. had no limitation in the domain of caring for yourself. Itemized Statement at 9.

I agree that the administrative law judge's errors, set forth above, do make it more likely than not that A.P.'s impairment or impairments result in at least marked limitations in the domain of caring for himself. *See, e.g.,* Record at 209, 217 (teachers' questionnaires); 267 (Dr. Kaufman's evaluation). The administrative law judge cites only the principal's questionnaire in support of his minimal discussion of this domain, *id*. at 16, but, on balance, that questionnaire supports a finding of marked limitations far more than it does a finding of no limitation.

At oral argument,[5] counsel for the plaintiff specifically pointed to the domain of interacting with and relating to others as another one in which A.P. was shown to have marked limitations by the evidence in the record. He cited the principal's questionnaire at page 215 of the record. *See also id*, at 207 (teacher's questionnaire). Counsel also correctly pointed out that

---

[5] Contrary to the assertion of counsel for the commissioner at oral argument, this expansion at oral argument of the issue raised in the plaintiff's itemized statement is not barred by *Farrin v. Barnhart*, 2006 WL 549376 (D. Me. Mar. 6, 2006), at *5, which holds that an issue not fairly raised in a party's itemized statement may not be raised for the first time at oral argument. The issue was fairly raised on the papers, and only then developed at oral argument.

11

the teacher's questionnaire at page 206 of the record demonstrates possible marked limitations in the domain of attending and completing tasks.

The administrative law judge's failure to conduct an adequate exploration of the record evidence of potential marked limitations in two or more domains requires remand.

Turning to A.P.'s alleged ODD, the plaintiff has not addressed the question of how a finding that A.P. also suffered from the severe impairment of ODD would affect the evaluation of the degree of limitations found in each of the domains. That issue thus must be deemed waived. *Farrin*, 2006 WL 549376 at *5.

The plaintiff also contends, in general terms, that the administrative law judge "based his finding that A.P.'s impairments did not functionally meet a listing on the opinion of DDS psychologist Dr. Allen" and that this opinion is not substantial evidence to support the administrative law judge's conclusions because Dr. Allen did not have the benefit of the teachers' questionnaires. Itemized Statement at 10-11. I see no reference to Dr. Allen's opinion (Exhibit 4F, Record at 286-91) anywhere in the administrative law judge's opinion.

While I have concluded that it is likely that A.P. suffered a marked limitation in more than one domain, I am unable to conclude that any of the record evidence cited by the plaintiff in this regard would support a finding of an extreme limitation in that domain. That is, those limitations shown in the record cannot reasonably be construed to interfere "very seriously" with A.P.'s ability to independently initiate, sustain, or complete self-care activities, as opposed to the merely "serious" interference that characterizes a marked limitation. 20 C.F.R. § 416.926a(e)(2) & (3). Accordingly, this possibility need not be considered on remand.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of October, 2009.

                                                    /s/ John H. Rich III
                                                  John H. Rich III
                                                  United States Magistrate Judge